UTILITIES INSURANCE CO. v. POTTER et al.

No. 27536. March 12, 1940.

Rehearing Denied Sept. 17, 1940.

*105 P. 2d 259.*

Clayton B. Pierce and Truman B. Rucker, both of Oklahoma City, for plaintiff in error.

John Barry, of Oklahoma City, and Williams, Cowan & Benedum, of Norman, for defendants in error.

OSBORN, J. Charles H. Potter, hereinafter referred to as plaintiff, recovered a judgment in the district court of Oklahoma county against R. O. Bur-

146

bridge, hereinafter referred to as defendant, for damages for personal injuries. The judgment became final and garnishment proceedings were issued against Utilities Insurance Company, the insurance carrier of defendant, hereinafter referred to as garnishee. The trial court sustained plaintiff's demurrer to the garnishee's answer, which incorporated therein by agreement of the parties all of the evidence on which it relied to defeat its liability. Judgment was rendered against it, and an appeal is prosecuted to this court in behalf of the garnishee.

Plaintiff was a member of the Oklahoma University Band. Defendant held a certificate issued by the Corporation Commission as a class B motor carrier. On November 22, 1934, defendant entered into a contract with the business manager of the band to furnish transportation to said band "for a trip to Washington, D. C., via Stillwater, Okla., St. Louis, Mo., and Cincinnati, Ohio, returning via Nashville, Tenn., and Memphis, Tenn." The trip was to commence on November 24, 1934. By the terms of the contract defendant was "to furnish such insurance as is already posted in care of the Corporation Commission as required under the class B permit." The contract was taken in the name of the Southwestern Teachers College, a trade-name, but the judgment rendered against defendant Burbridge conclusively established the fact that he was the operator of the motor buses involved herein, and was in fact the contracting party even though the contract was signed by him "as agent" for said Southwestern Teachers College.

It appears that plaintiff was injured twice while on the trip, the injuries occurring in the states of West Virginia and Tennessee. Upon those injuries the judgment involved herein is predicated.

The insurance company denies liability on two grounds: (1) That the motor vehicle in which Potter was injured was not covered by its policy, and (2) that the injuries occurred outside of the state of Oklahoma. The policy was filed with the Corporation Commission and be-

came effective on September 11, 1934. It is called a "combination automobile policy," and under its general provisions it purports to insure against loss from liability and for damages from bodily injury, including death resulting therefrom, accidentally suffered by any person or persons, subject to the limitations expressed in the declarations. Under its general terms the policy insures against loss "only within the limits of the United States (exclusive of Alaska, the Hawaiians, Philippines, and Virgin Islands and Puerto Rico) and Canada," and in another part of the contract it is provided that the policy does not cover loss while beyond the boundaries of the United States of America and Canada or while in Alaska or the island possessions of the United States. The garnishee contends that the above-quoted general provisions of the policy have no application for the reason that liability arising thereunder is limited to the declarations of the policy which limit the general liability to insurance upon two International motor buses, whereas the buses involved in the injuries to plaintiff were Ford V-8 buses, and were not buses named in the declaration. In this connection we are referred to an endorsement designated as Form C on the policy which is that portion of the policy purporting to comply with the statutory requirements for issuance of a certificate of convenience and necessity by the Corporation Commission. The form of said endorsement is prescribed by rule of the commission and provides, in part, as follows:

"Motor Vehicle Form No. 'C'
Insurance Policy Endorsement

"*The policy* to which this endorsement is attached *is written under and pursuant to the provisions of chapter* 113, *of the Session Laws of Oklahoma,* 1923, *and it is to be construed in accordance therewith and the rules and regulations of the Corporation Commission of Oklahoma and implies an acceptance of such rules and regulations,* and is payable to the state of Oklahoma for the benefit of all persons who may suffer personal injuries, including death, or property damage due to any negligence of the assured, his/its agents, employes, or representatives in the operation or use of

any motor vehicle under certificate of public convenience and necessity No. 1905.

"In consideration of the premium stipulated in the policy to which this endorsement is attached *the insurer hereby waives a description of the motor vehicles operated or used under said certificate* and agrees to pay any final judgment rendered against holders of such certificate for personal injuries, including death, or damage to property other than that of the holder of said certificate due to the negligence of said holder, his/its agents or employees, or representatives, *in the operation or use of any motor vehicle, whether listed in the original schedule of motor vehicles filed with the original application or whether it be an additional, substituted or emergency vehicle operated under said certificate by any order or rule of the Corporation Commission within the limits of the schedule hereinafter set out,* and further agrees that, upon its failure to pay any such final judgment within sixty days from the date of its rendition or final affirmance on appeal, the judgment creditor may maintain an action against it in any court of competent jurisdiction to enforce such payment. This policy shall be a continuing indemnity. The indemnity thereof shall not be reduced as to any succeeding accident by any payment of any claim or by any judgment or any previous accident. *Nothing contained in the policy or any endorsement thereon, nor the violation of the provisions thereof or any law of the state by the assured shall relieve the insurer from any liability hereunder or from the payment of any such judgment.*

"*No condition, provision, stipulation or limitation contained in the policy or any other endorsement thereon nor the violation of any of the same by the insured shall affect in any way the right of any person injured in his person or property by the negligence of the insured or relieve the company from the liability provided for in this endorsement, or from the payment to such person of any such judgment, to the extent and in the amounts set forth in the schedule shown hereon,* but the conditions, provisions, stipulations and limitations contained in the policy and any other endorsements thereon shall remain in full force and be binding as between the insured and the company."

Section 4, chapter 156, Session Laws 1933, was in force and effect at the date of issuance of the policy involved herein and provides as follows:

"Section 4. Section 3708, Oklahoma Statutes, 1931, be, and the same is hereby amended to read as follows:

"Section 3708. No certificate of convenience and necessity, or permit, shall be issued by the Corporation Commission to any motor carrier until after such motor carrier shall have filed with the Corporation Commission a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier, authorized to do business in this state and which has complied with all of the requirements of the Corporation Commission, which bond or policy shall be approved by the Corporation Commission, and shall be in such sum and amount as fixed by a proper order of said Commission; and such liability and property damage insurance policy or bond *shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable;* provided, that said Commission, may, in its discretion, relieve any motor carrier herein classified under class 'C', from the obligation of filing such public liability and property damages bond. A copy of such policy or bond shall be filed with said Commission, and, after judgment against the carrier for any such damage, the injured party may maintain an action upon such policy or bond to recover the same, and shall be a proper party so to do."

It is noted that the Form "C" endorsement recites that it is written pursuant to the provisions of chapter 113, Session Laws 1923. Section 7 of that act was amended by section 10, chapter 253, Session Laws 1929 (sec. 3708, O. S. 1931) which was amended by the above-quoted act. An examination of all of these acts discloses that the pertinent language contained in the various acts is substantially the same. This was point-

ed out in the case of Enders v. Longmire, 179 Okla. 633, 67 P. 2d 12. The policy having become effective on the 11th day of September, 1934, during which time section 4, ch. 156, Session Laws 1933, was in effect, and having been filed pursuant to said act, the provisions of said act were substituted as a matter of law for the recited provisions of chapter 113, Session Laws 1923.

It is noted that Form "C" hereinabove referred to provides that the policy to which the endorsement is attached is written under and pursuant to the provisions of chapter 113, Session Laws 1923, and is to be construed in accordance therewith. Since the 1933 act is substituted for the 1923 act, we turn to section 4, chapter 156, Session Laws 1933, hereinabove quoted and note that under the provisions thereof the liability of the insurer is made co-extensive with the liability of the insured, insofar as there is legal liability for damages resulting from the operation of such insured carrier. By the terms of the Form "C" endorsement the provisions of the statute become a part of the *policy;* therefore, the *policy* must be construed to provide a coverage for the full degree of liability fixed by the statute. It is true that there is a stipulation found in the general terms of the policy limiting the coverage to two International motor buses, but "no * * * limitation contained in the policy * * * shall relieve the company from the liability provided for in this endorsement," said liability being the statutory liability fixed by chapter 156, Session Laws 1933. Giving full effect, therefore, to the quoted language of the Form "C" endorsement, we must eliminate that provision of the *policy* limiting coverage to two International motor buses. Having done so, the general terms of the policy are applicable and include damages sustained within the territorial limits of the United States and Canada. Moreover, Form "C" contains the following provisions:

"In consideration of the premium stipulated in the policy to which this endorsement is attached, the insurer hereby waives a description of the motor vehicles operated or used under said certificate and agrees to pay any final judgment rendered against holder of such certificate for personal injuries, including death, or damage to property other than that of the holder of said certificate due to the negligence of said holder, his/ its agents or employes, or representatives, in the operation or use of any motor vehicle, whether listed in the original schedule of motor vehicles filed with the original application or whether it be an additional, substituted or emergency vehicle operated under said certificate by any order or rule of the Corporation Commission within the limits of the schedule hereinafter set out. * * *"

Said Form "C," having been attached to and made a part of the policy, must be construed in connection with the provisions of the policy itself, and construing same together, it appears that the garnishee specifically waived a description of the vehicles used and expressly agreed to the substitution of other vehicles for the vehicles described in the declaration. This contention of garnishee, therefore, has no merit.

We pass to a consideration of the contentions relating to the liability fixed by the Form "C" endorsement. The garnishee contends that its liability extends only to the use of the motor vehicles while operating under the certificate of convenience and necessity No. 1905, which certificate authorized "the transportation of passengers to and from all points within the State of Oklahoma." It is urged, therefore, that the policy is not effective to cover liability for damages resulting from the transportation of passengers beyond the state line. The ultimate liability of the garnishee is not fixed by the provisions of the Form "C" endorsement and the language of the certificate. Where a liability bond is filed as a prerequisite to the issuance of a certificate of convenience and necessity to a motor carrier, neither the bondsmen nor the carrier may successfully contend that the bond limits the liability imposed by the statute, except as to amount. Jacobson v. Howard, 164 Okla. 88, 23 P. 2d 185; Temple v. Duggar, 164 Okla. 84, 21 P. 2d 482; Enders v. Longmire, 179 Okla. 633, 67 P. 2d 12; Curtis v. Michaelson (Iowa) 219 N. W. 49.

Again we are required to advert to the statutes to determine the extent of the liability imposed by the Form "C" endorsement, and find said liability to be co-extensive with the liability of motor carrier for damages resulting from the operation of any such motor carrier "for which such carrier is legally liable." In this connection, it is noted that the liability of the carrier was fixed by an Oklahoma court under the law of negligence as it prevails in this jurisdiction. No contention is made that the court exceeded its jurisdiction in that respect. The contract was made in Oklahoma. All of the parties involved were residents of the state of Oklahoma. The trip contracted for was to begin and terminate in Oklahoma. In the absence of the certificate of the Corporation Commission the motor carrier would not have been authorized to enter into the contract involved herein. Except for the filing of the bond no such certificate could have been issued.

Although our statutes do not limit the liability of the insurance carrier to damages incurred within the borders of this state, said statutes do not, in that respect, violate article 1, cl. 3, sec. 8, of the Constitution of the United States, commonly referred to as the Commerce Clause. This was pointed out in the case of Automobile Insurance Company of Hartford, Conn., v. Winn & Lovett Gro. Co. (Ga.) 180 S. E. 608, where that question was presented for determination. Therein it was said:

"In Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 142, 59 L. Ed. 385, it was held: 'In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles,—those moving in *interstate commerce* as well as others.' (Italics ours.) Also, in this connection see Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. In Hicklin v. Coney, 290 U. S. 169, 54 S. Ct. 142, 78 L. Ed. 247, it was held that 'A state, in exercising its control over the use of highways, may make reasonable regulations governing that use by private contract carriers. * * * State

regulations of the use of highways by private contract carriers may require on the part of interstate as well as intrastate carriers the payment of reasonable license fees and the filing of insurance policies to protect the interests of the public by securing compensation for injuries to persons and property from the negligent operations of such carriers.' See Aero Mayflower Transit Co. v. Georgia Public Service Commission, 179 Ga. 431, 176 S. E. 487."

In the case of South Carolina State Highway Department v. Barnwell Bros., 303 U. S. 177, 82 L. Ed. 734, it was said:

"The nature of the authority of the state over its own highways has often been pointed out by this court. It may not, under the guise of regulation, discriminate against interstate commerce. But 'In the absence of national legislation especially covering the subject of interstate commerce, the state may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use applicable alike to vehicles moving in interstate commerce and those of its own citizens.' Morris v. Duby, 274 U. S. 135, 143, 71 L. Ed. 966, 971, 47 S. Ct. 548. This formulation has been repeatedly affirmed, Clark v. Poor, 274 U. S. 554, 557, 71 L. Ed. 1199, 1200, 47 S. Ct. 702; Sprout v. South Bend, 277 U. S. 163, 169, 72 L. Ed. 833, 836, 48 S. Ct. 502, 62 A. L. R. 45; Sproles v. Binford, 286 U. S. 374, 389, 390, 76 L. Ed. 1167, 1179, 1180, 52 S. Ct. 581; cf. Morf. v. Bingaman, 298 U. S. 407, 80 L. Ed. 1245, 56 S. Ct. 756, and never disapproved. This court has often sustained the exercise of that power although it has burdened or impeded interstate commerce. It has upheld weight limitations lower than those presently imposed, applied alike to motor traffic moving interstate and intrastate. Morris v. Duby, 274 U. S. 135, 71 L. Ed. 966, 47 S. Ct. 548, supra; Sproles v. Binford, 286 U. S. 374, 76 L. Ed. 1167, 52 S. Ct. 581."

See, also, Annotations 83 L. Ed. 1168; 109 A. L. R. 1245.

It appears that subsequent to the date of the injuries herein the Congress passed a comprehensive act known as the Motor Carrier Act, U. S. C. A., title 49, ch. 8, secs. 301-327, providing for the

regulation of interstate transportation by motor carriers. The act became effective October 1, 1935.

The purpose of the statute requiring the taking out of a policy of liability insurance as a condition of the granting of a certificate for passenger-carrying vehicles on improved public highways is the protection of passengers and members of the public who may be injured by negligence of the bus operators, and a policy issued for such purpose must be construed most strongly against the insurer. J. C. Ott v. American Fidelity & Casualty Co., 161 S. C. 314, 159 S. E. 635, 76 A. L. R. 4. The intent of the law is to put financial responsibility behind the operation of a motor transportation company as a protection to the public. Hindel v. State Farm Mutual Automobile Ins. Co. (C. C. A. 7th) 97 F. 2d 777; Fidelity & Cas. Co. of N. Y. v. Jacks, 231 Ala. 394, 165 So. 242.

In the instant case we are not required to give a strained construction to the statutes involved and the language of the contract, in order to give full effect to the intent of the law. There is nothing in the language of either which purports to limit the liability to damages incurred only within the boundaries of this state. The garnishee would have us construe such language into the law. This we cannot do. We must hold that the garnishee must respond to the liability fixed by the provisions to which we have referred.

It is next contended that the trial court committed error in refusing to grant removal of the cause to the United States District Court. This proposition, however, was not presented to the trial court by motion for new trial, and cannot therefore be urged on appeal. Chicago, R. I. & P. Ry. Co. v. Warren (1928) 132 Okla. 107, 269 P. 368.

The garnishee contends that the above authorities are not in point on the propositions stated for the reason that the appeal in this case was from an order sustaining a demurrer to the answer of garnishee and therefore a motion for new trial was unnecessary and improper. In this connection the record shows that on April 28, 1936, there was filed a motion to require the garnishee to certify the facts and circumstances upon which it relied to relieve it from liability. On May 8th the garnishee filed a lengthy pleading styled "Amended and Supplemental Answer of Garnishee, Defendant, Utilities Insurance Company." Attached to such pleading were numerous exhibits, including the insurance policy with the endorsements thereon; the Corporation Commission's permit No. 1905; the contract for use of the buses; transcript of the evidence adduced at the former trial, including opening statements of counsel; and certain correspondence between counsel for the parties. While the above instrument was styled a pleading, it was obviously treated by the trial court as a statement of facts and evidence. Plaintiff demurred to the "response or statement of facts filed by the Utilities Insurance Company, garnishee herein, for the reason that the said statement of facts shows upon its face that the garnishee is liable. * * *" This demurrer was sustained, and from said ruling this appeal was taken. Since the trial court treated this demurrer as a demurrer to the evidence, the same will be so treated here. It is well settled that to secure a review of a ruling on a demurrer to the evidence a motion for a new trial must be filed. Harper v. Rutland Savings Bank, 79 Okla. 274, 192 P. 1101; City of Sapulpa v. Young, 147 Okla. 179, 296 P. 418; Hunt v. Tribune Pub. Co., 172 Okla. 139, 44 P. 2d 889. It therefore appears that the authorities hereinabove cited are determinative and controlling of the procedural questions presented.

The judgment of the trial court is affirmed.

CORN, HURST, DAVISON, and DANNER, JJ., concur. BAYLESS, C. J. WELCH, V. C. J., and GIBSON, J. dissent. RILEY, J., absent.